U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2010 MAR -1 P 1:51
JON W. SANFILIPPO
CLERK

United States District Court
Eastern District Of Wisconsin

Terrance Prude,
Plaintiff,

-vs-

David A. Clarke, Jr., Kevin Carr, Richard Schmidt, and Jailor McKnight,
Defendants.

Case No. 10-C-0167

Class Code #: ____

Complaint Under The Civil Rights Act 42 U.S.C 1983

Now Comes the Plaintiff, proceeding pro se, and for, as a cause of action against the above named defendants, alleges and shows the court that:

## Nature of the Case

(1) This is a civil action brought forth under the civil rights Act 42 U.S.C. 1983, for violations of plaintiff's constitutional rights protected under the 8th and 14th amendments to the U.S. Constitution. Plaintiff seeks compensatory, punitive, declaratory and injunctive relief.

## Jurisdiction

(2) The Court has jurisdiction pursuant to 28 U.S.C. 1331 and

1343, as well as Article III of the U.S. Constitution

## Exhaustion

(3) Plaintiff has exhausted all available administrative remedies.

## Parties

(4) Plaintiff: <u>Terrance Prude</u> (Prude hereinafter), was at all relevant times a Wisconsin State Prisoner being detained in the Milwaukee County Jail, 949 N. 9th St., Milw, WI 53233. Prude's current address and placement of confinement is Wisconsin Secure Program Facility (W.S.P.F.), 1101 Morrison Dr., P.O. Box-9900, Boscobel, WI 53805-9900.

(5) Defendants: <u>David A. Clarke, Jr.</u>, was at all relevant time the Sheriff of the Milwaukee County Jail (M.C.J); <u>Kevin Carr</u>, was at all relevant times the County Inspector for M.C.J; <u>Richard Schmidt</u>, was at all relevant times the County Inspector for the M.C.J; and Jailor <u>Mcknight</u>, was at all relevant times a Jailor for the M.C.J. All acted under color of state law, and all are being sued in their individual and official capacity.

## Cause Of Action And Facts

(6) The plaintiff, Terrance Prude (Prude hereinafter), was an inmate in the Milwaukee County Jail (M.C.J) for 19 days between September – October 2009.

(7) The M.C.J has an inmate handbook entitled <u>Detention Bureau-Inmate Handbook</u> which was issued to Prude while he was at the M.C.J, supra(6), with an effective/revision date of 12-1-08

(8) The <u>Introduction</u> section of the "<u>Handbook</u>" (supra(7)) states in relevant part:

While you are in the Milwaukee County Jail, your basic needs will be met, your rights will be protected and you will reside in a safe and secure environment. Id. pg. 1.

(9) The <u>Inmate Rights</u> section of the "<u>Handbook</u>" (supra(7)) identifies four of those protected rights, supra(8), as follows:

(i) A safe and secure environment;
(ii) Be treated with respect, impartiality and fairness;
(iii) Nutritious meals; and
(iv) Protection from abuse, corporal punishment, personal injury, disease and damage to your property. Id. pg. 1.

(10) The M.C.J has a general population and a unit for

inmates held in segregation. Inmates held in segregation are held in a unit called "4D".

(11) In addition to the general M.C.J "Handbook", supra(7), inmates in Pod 4D are also issued Pod 4D Inmate Rules, which Prude received a 2-9-09 revised version of while he was at the M.C.J, supra(6).

(12) The Pod 4D Inmate Rules include the following rule: You will receive a bag lunch or tray. Any refusal to return the bag, wrapping, milk container, eating utensil, tray, or intentional projecting of any food item or using any food container to project items shall result in your receiving the "nutraloaf" for a 3-30 day period. (bold print and emphasis in original).

(13) Inmate Pod 4D inmates include those serving disciplinary time in segregation for rule violations, those in "Max Custody" (a form of administrative confinement) and those in "Protective Custody".

(14) Until sometime in the summer of 2009, inmates in the M.C.J general population and those on Pod 4D all received the same meals, i.e., the same three "regular" meals a day; and only those who actually committed food-related rule violations were placed on

"nutraloaf", as is consistent with the MCJ <u>Pod 4D Inmate Rules</u>, supra 12.

(15) Prude committed no rule violations, but from 9-24-09 to 10-1-09 and from 10-12-09 to 10-22-09 he was placed on nutraloaf. Prude was not accused of any rule violations, let alone food-related ones, and posed no special security concerns to be denied regular food.

(16) The nutraloaf, per order and/or execution and policy of defendants Clarke, Carr and Schmidt, as well as McKnight, was issued to Prude, who was in Max Custody, but not all prisoners in Pod 4D, such as those in protective custody or other prisoners in Max Custody or punitive segregation who provided information to the jailors (i.e., information that incriminated others)

(17) Prude refused to provide information to MCJ jailor in exchange for regular meals, as did many others, and was thus forced to try and consume nutraloaf, unsuccessfully.

(18) Prude could not successfully consume or adequately digest nutraloaf, which lead to him repeatedly vomitting it back up and being forced to receive medical treatment just to clean it out of his system, which was clogged up by it due to the inability to properly digest it.

(19) This medication Prude received for this, supra (18),

was Docusate Sodium 100mg and calcium carbonate 500Mg. In addition to the above, supra(18), Prude also suffered an anal fissure which damaged his rectal mucosa (i.e., a tear in the lining of the lower rectum), which has yet to fully heal even to this day, is very painful, & for which he is receiving Miralax and Ointment for.

(20) What Prude experienced, supra(18)-(19), was not uncommon. Some prisoners went weeks (as much as three weeks) without a bowelmovement, some passed out (not eating it - i.e., nutraloaf), many vomit it up, many received medical treatment. Each defendant was aware of these problems being caused by the nutraloaf, as well as the fact that it was causing Prude (and others) medical and emotional pain and distress, and still refused them regular meals.

(21) The nutraloaf, called "slop loaf" by inmates, is indeed a lump of congealed food and defies any reasonable notion of nutritiousness where it is literally uneatable by such a large number of inmates without injury of some kind. It is slop, cold slop given in a paper bag. Because Prude could not adequately consume and digest the slop loaf he literally ate bread and water, was forced to because there was nothing else for him to eat (no canteen allowed for him, nothing), as a result he lost nine (9) pounds within 5 days.

(22) Both max custody, which Prude was in, and protective custody are non-punitive, non-disciplinary statuses.

⑦

(23) Prude was in the MCJ for court only, and was ~~not~~ actually a state prisoner. However, the MCJ has a loose policy of placing state prisoners in situations/statuses similar to the one they were in in they state prison; i.e., those in general population (G.P) in prison go to g.p in the MCJ, those in Protective Custody (P.C) in prison go to p.c in the MCJ, and those in administrative confinement ~~[struck through text]~~ ~~[struck]~~ in prison generally (not always) go to Max Custody in the MCJ (some go to g.p). In administrative confinement, a non-punitive status, which is what Prude was in in prison, prisoners get regular meals.

(24) There existed no legitimate penological interest for defendants to deny regular meals to Prude, as was provided to other MCJ prisoners, including those on Pod 4D, or to require that he provide information (incriminating others) for regular meals.

(25) Defendant Clarke authorized the above described policies and actions against Prude, and defendants Carr and Schmidt, as deputy inspectors ensured the policy being executed and were aware of, and failed to seek a change in, the policies executions and affects on the inmates, and defendant McKnight enforced the policy – including personally soliciting "useful information" from Prude (and others) in exchange for providing him a regular meal.

(26) As a proximate result of each defendants action and/or omissions, supra (6)-(25), Prude has suffered both physical and mental pain and anguish, some of which has required medical treatment.

(27) Defendants actions, supra (6)-(25), were done with wanton, deliberate and callous disregard to Prude's constitutional rights (as well as their own rules) and his physical and mental health, and to inflict pain and punish, and to cause atypical hardships, and did do so.

## 1st Cause Of Action

(28) Each defendant, by their actions and/or omissions, supra (6)-(25), have violated Prude's Eighth Amendment Right to be free of cruel and unusual punishment (mentally and physically).

## 2nd Cause Of Action

(29) Each defendant, by their actions and/or omissions, supra (6)-(25), have violated Prude's first amendment rights to not speak (i.e., provide information for meals) and not to be retaliated against for not speaking (i.e. served slop loaf).

## 3rd Cause Of Action

(30) Each defendant, by their actions and/or omissions supra (6)-(25), have violated Prude's fourteenth amendment rights to be treated equally to those similarly situated as him and to be free from arbitrary, capricious and oppressive actions of government and to be subject to such government actions without due process of law.

## Jury Trial Demand

(31) Prude demands a trial by jury.

## Relief Sought

(32) Prude demands the following relief:

(i) Declaratory relief declaring defendants actions and/or omissions, supra (6)-(25), do in fact violate the 1st, 8th and 14th amendments to the United States Constitution;

(ii) Compensatory relief in the amount of $25,000, separately, from each defendant, for each cause of action (separately)

(iii) Punitive relief in the amount of $25,000, separately,

⑩

from each defendant, for each cause of action (separately);

(iv) Injunctive relief, both preliminary and permanent, enjoining defendants to cease and desist their actions, supra (6)-(25), and unlawful policies.

(v) All other relief available in a court of law, including the expenses incurred as a result of bringing forth this action and attorney fees (should one appear).

## Verification Under Oath

I, Terrance Prude, pursuant to 28 U.S.C. 1746, under penalty of perjury, do hereby attest to the truth of all of the above pleaded facts, which are made based on my personal knowledge, willingly; and, I will so testify to the same, and I am a person of adult age and discretion to make this attestation and do so.

Dated this 11th Day Of February, 2010

Signed: *Terrance Prude*  
Terrance Prude (#335878)  
W.S.P.F., P.O. Box-9900  
Boscobel, WI 53805-9900

Submitted On: 2-23-10

T.C.

## Defendant's Address

1) David Clarke (Sheriff)
   821 W. State Street
   Room - 107
   Milw, WI 53233

2) Kevin Carr (Deputy Inspector)
   821 W. State Street
   Room - 107
   Milw, WI 53233

3) Richard Schmidt (Deputy Inspector)
   821 W. State Street
   Room - 107
   Milw, WI 53233

4) D. McKnight (Jailor)
   949 N. 9th Street
   Milw, WI 53233