# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

        Plaintiff,

v.                                                  Case No. 10-CV-167

DAVID A. CLARKE, JR., KEVIN CARR,
RICHARD SCHMIDT, and JAILOR MCKNIGHT,

        Defendants.

# ORDER

The plaintiff, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and paid the full filing fee. He is proceeding on an Eighth Amendment claim based on alleged harm from a nutraloaf diet and a claim that he was fed nutraloaf in retaliation for refusing to provide incriminating information about other inmates. The parties have filed cross-motions for summary judgment, which will be addressed herein.[1]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] The defendants filed their motion for summary judgment on October 13, 2010, and the plaintiff filed a response on November 5, 2010. The plaintiff filed his original motion for summary judgment October 15, 2010. On January 10, 2011, the court denied the motion without prejudice and provided leave to refile after the plaintiff received certain discovery. On April 21, 2011, the plaintiff refiled his original motion for summary judgment and on April 29, 2011, he filed a motion for summary judgment in which he incorporates by reference his original motion for summary judgment. The plaintiff's intent - for the court to consider his October 2010 motion for summary judgment - is clear. For administrative purposes, the court will deny as moot the April 21, 2011 motion.

matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND

The plaintiff, a state inmate at all times relevant, was held at the Milwaukee County Jail (Jail) from September 24 to October 1, 2009, and from October 12 to October 22, 2009. Peter R. Jaskulski is a captain with the Milwaukee County

Sheriff's Department. He has been employed by the Milwaukee County Sheriff's Office since 1988 and is also Assistant Chief of the Hales Corners Fire Department. Captain Jaskulski's training and expertise include many aspects of the incarceration of inmates, including uses of force and nutrition.

Before the plaintiff's September 24, 2009, and October 12, 2009, arrivals at the Jail, Captain Gerl from the Wisconsin Secure Program Facility had placed him on segregation/administrative confinement status. This status follows an inmate to any correctional facility, and it followed the plaintiff to the Jail. When he arrived at the Jail on September 24, 2009, the plaintiff was placed in Segregation Unit Pod 4D, a disciplinary dorm which also houses protective custody and maximum custody inmates. When he arrived there on October 12, 2009, he continued to be on segregation/administrative confinement status.

All inmates who are in active discipline or maximum custody are given nutraloaf. Nutraloaf has been determined to be a nutritious substitute for regular meals.

According to the plaintiff, the nutraloaf was "congealed food known as 'slop loaf' by MCJ inmates" and was "cold slop in a bag." (Prude Aff. ¶ 3.) The plaintiff had difficulty eating the nutraloaf and continually vomited it up. He had difficulty digesting the portion of the nutraloaf he was able to eat and it "clogged up" his system. (Prude Aff. ¶ 6.) As a result of having to rely on bread and water due to difficulties consuming the nutraloaf, the plaintiff lost five pounds when he was at the

Jail from September 24 to October 1, 2009. He lost nine pounds during his October 12 to October 22, 2009, stay at the Jail.

On October 2, 2009, the plaintiff submitted a Jail Inmate Grievance Form which states in relevant part:

> I arrived to MCJ on 9-24-09 from state prison and was put in seg unit & fed punitive loaves. I did nothing wrong, before I came to MCJ inmates were on seg loaf for behavior unrelated to the misuse of food or utensils. No due process hearing was held to put myself or other inmates on "punitive loaves" and it violates law to place inmates on Nutraloaf longer than 7 days. It also violates due process to punish with seg loaf without a due process hearing.

(Prude Aff. ¶ 4, Ex. 3.) On October 27, 2009, Sergeant B. Myers responded to the plaintiff's grievance, stating in relevant part:

> Per Sheriff David A. Clarke, Jr., all inmates in 4D with a status of Pending Discipline, Discipline, or Max Custody will be served Nutra Loaf. It is a nutritious meal & meets all daily caloric & vitamin & mineral requirements.

(Prude Aff. ¶ 4, Ex. 6, Inmate Grievance Response.)

The plaintiff sought medical treatment at the Jail when he had difficulty digesting the nutraloaf. He was seen by Correctional Health Services on October 14, 15, and 16, 2009. (Prude Aff. ¶ 4, Exs. 19-22.) He was prescribed Docusate Sodium and calcium carbonate to help clean out his bowels. The plaintiff was also prescribed anasol and miralox to treat an anal fissure he suffered when he finally did have a bowel movement.

Captain Jaskulski avers that the plaintiff was not given nutraloaf in retaliation for refusing to divulge information about other inmates. The plaintiff avers:

-4-

> Defendant McKnight specifically solicited Prude and other inmates for incriminating information on fellow prisoners for food (i.e., regular food, such as bologna sandwiches), and p.c. (generally informants) inmates were given regular meals while Prude was there 9-24-09 to 10-1-09 and 10-12-09 to 10-22-09, and all those who informed (regardless of seg. status), and defendants Clarke, Jr., Carr, and Schmidt was [sic] aware of this and the injury, illness, and hardships this was causing. Prude refused to inform on others, so he was punished with "slop loaf."

(Prude Aff. ¶¶ 4, 7.)

## DISCUSSION

As an initial matter, the plaintiff contends that the defendants' motion for summary judgment and supporting materials are deficient because they are not signed, but rather the names on the signature lines are typed. However, the defendants filed their summary judgment materials electronically. *See* General L.R. 5(a) (E.D. Wis.). The signatures on the defendants' submissions comply with the applicable rules. *See* Fed. R. Civ. P. 5(d)(3); *see also*, Electronic Case Filing Policies and Procedures Manual at 6-8.)

### A. Conditions of Confinement Claim

The defendants contend that the plaintiff's conditions of confinement did not violate his Eighth Amendment rights. The plaintiff argues that his nutraloaf diet at the Jail violated his rights under the Eighth Amendment. Specifically, he contends that he suffered objectively serious injuries and hardship as result of the nutraloaf diet. The plaintiff asserts that the defendants were aware of the harms and persisted in the diet.

Under the Eighth Amendment, a prisoner's diet must provide adequate nutrition, *see Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir. 1996), but prison officials cannot be held liable unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not. *See Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)); *see also Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). Food served in prison must be nutritious, but it does not have to be delicious or even particularly appetizing. *See Antonelli*, 81 F.3d at 1432; *Lunsford v. Bennett*, 17 F.3d 1574, 1580-81 (7th Cir. 1994).

The court credits Captain Jaskulski's averment that nutraloaf has been determined to be a nutritious substitute for regular meals. As the plaintiff has not provided evidence the nutraloaf lacked the required nutrients, placing him on a temporary nutraloaf diet was not of itself a violation of the Eighth Amendment. *See Lemaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (temporary nutraloaf diet did not violate Eighth Amendment). Moreover, the plaintiff describes that after he had difficulties consuming the nutraloaf, his diet was limited to bread and water only. Thus, it appears that he did receive food other than nutraloaf during his brief stays at the Jail.

The plaintiff also claims that his constitutional rights were violated because he had trouble consuming and digesting the nutraloaf, and because it caused him injury in the form of an anal fissure. To successfully sue the defendants for not discontinuing the nutraloaf diet, the plaintiff needs to show that he suffered an

objectively, sufficiently serious deprivation and that they were deliberately indifferent to that deprivation. *Farmer*, 511 U.S. at 834. Although the plaintiff's vomiting of the nutraloaf, and difficulty digesting it, leading to weight loss might qualify as a serious deprivation of food, *cf. Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (suggesting that prisoner who lost forty-five pounds on nutraloaf diet might have had Eighth Amendment claim); *see also Reed v. McBride*, 178 F.3d 849, 853-54 (7th Cir. 1999) (depriving inmate of food may, depending on amount and duration of deprivation, be objectively serious), the facts show that the defendants were not deliberately indifferent to any deprivation.

First, the plaintiff was at the Jail from September 24 until October 1, 2009 (eight days), and from October 12 until October 22, 2009 (eleven days), two relatively short periods of time. According to the plaintiff, he lost five pounds and nine pounds, respectively, during his stays, a far cry from the 45 pounds lost in *Sanville*, *supra*. Also, as indicated, the plaintiff received bread in addition to the nutraloaf. Moreover, the plaintiff received medical attention after complaining about the adverse affects of the diet. He received prescription medication to help him digest the nutraloaf. He also received medication for an anal fissure. Notably, there is no indication that medical staff advised the plaintiff to discontinue the nutraloaf diet. In short, the plaintiff has not established that any defendant acted with deliberate indifference in relation to this claim. *See Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) (no Eighth Amendment violation if official responds reasonably to prisoner's complaints).

**B. Retaliation Claim**

The defendants contend that the plaintiff's retaliation claim fails because he cannot prove he engaged in activity protected by the First Amendment or that he suffered a deprivation intended to deter First Amendment activity in the future, and because there is no evidence that retaliatory action was taken against the plaintiff. The plaintiff contends that the defendants retaliated against him for refusing to inform against others. According to the plaintiff, the facts establish that he was engaged in the exercise of his freedom to not speak at all, he was deprived of regular meals which was likely to deter future silence, and that such activity was a motivating factor in the plaintiff not receiving regular meals.

To succeed on his claim that the defendants fed him a nutraloaf diet in retaliation for not informing on other inmates at the Jail, the plaintiff must show that: (1) his silence was protected activity under the First Amendment; (2) the defendants' actions would deter protected activity in the future; and (3) his silence motivated the defendants' actions. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

In this case, it is undisputed that the plaintiff was on a nutraloaf diet during his September and October 2009, stays at the Jail. It is also undisputed that the plaintiff was placed on the nutraloaf diet because of his segregation status, which followed him to the Jail from Wisconsin Secure Program Facility.

The plaintiff avers that inmates in Pod 4D segregation at the Jail who were informants and/or state witnesses on protective custody, maximum custody inmates,

or disciplinary segregation inmates who were willing to inform on other inmates, were served regular meals instead of nutraloaf. The plaintiff has not provided evidence of any specific inmate who was served regular meals instead of nutraloaf in exchange for informing on another inmates. Even if he had, the plaintiff is describing an incentive offered to a willing inmate, who apparently otherwise would have been on a nutraloaf diet if he chose not to keep quiet, like the plaintiff did. The plaintiff is not describing a retaliatory action taken because he kept quiet.

The plaintiff asserts that the Jail's Pod 4D Inmate Rule that inmates will be served Nutraloaf if they commit a food-based violation and that he did not commit a food-based violation, supports his retaliation theory.[2] However, the existence of that policy does not negate the existence of a separate policy that inmates are served nutraloaf based on their status. Indeed, the October 27, 2009, response to the plaintiff's inmate grievance states: "Per Sheriff David A. Clarke, Jr., all inmates in 4D with a status of Pending Discipline, Discipline, or Max Custody will be served Nutra Loaf." (Prude Aff. ¶ 4, Ex. 6.) He further asserts that during a previous stay at the Jail, from July 27 to August 1, 2009, he was also assigned to the Pod 4D

---

[2]The Jail's Pod 4D Inmate Rules provide in relevant part:

    You will receive a bag lunch or tray - Any refusal to return the bag, wrapping, milk container, eating utensil, tray or the intentional projecting of any food item or using any food container to project items shall result in your receiving the "Nutraloaf" for a 3-30 day period.

(Prude Aff. ¶ 4, Ex. 2.)

segregation unit, but did not receive the nutraloaf diet at that time. However, there is no indication of his incoming status during that stay.

In sum, the court finds that no reasonable fact finder could conclude that the plaintiff received nutraloaf in retaliation for not informing on other inmates. Thus, his retaliation claim will be dismissed.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #33) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Docket #72) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Docket #76) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is herewith **DISMISSED with prejudice**.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of July, 2011.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge