# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

April 27, 2012

To:      Jon W. Sanfilippo
         UNITED STATES DISTRICT COURT
         Eastern District of Wisconsin
         Milwaukee , WI 53202-0000

|  |  |
|---|---|
| No.: 11-2811 | TERRANCE PRUDE,<br>Plaintiff - Appellant<br><br>v.<br><br>DAVID A. CLARKE, JR., et al.,<br> Defendants - Appellees |

| **Originating Case Information:** |
|---|
| District Court No: 2:10-cv-00167-JPS<br>Eastern District of Wisconsin<br>District Judge J. P. Stadtmueller |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

AMOUNT OF BILL OF COSTS (do not include the $):          450.00

DATE OF MANDATE OR AGENCY CLOSING LETTER ISSUANCE:          04/27/2012

RECORD ON APPEAL STATUS:                 No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                **Received by:**

   04/27/12                          s/Jelena Vekic

_____        _____

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## BILL OF COSTS

April 27, 2012

Taxed in Favor of: **Appellant Terrance Prude**

| | |
|---|---|
| No.: 11-2811 | TERRANCE PRUDE, Plaintiff - Appellant<br><br>v.<br><br>DAVID A. CLARKE, JR., et al., Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:10-cv-00167-JPS<br>Eastern District of Wisconsin<br>District Judge J. P. Stadtmueller | |

The mandate or agency closing letter issued in this cause on April 27, 2012.

BILL OF COSTS issued in the amount of: $450.00.

| | | Cost of Each Item | Total Cost Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: _____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page: _____ | _____ | _____ |
| 3. | For reproduction of briefs: | $    450.00 | _____ |

4.  _____

5.  _____

TOTAL:          $      450.00

form name: **c7_BillOfCosts**(form ID: **140**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

**CERTIFIED COPY**

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

March 27, 2012

Before:     RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No.: 11-2811 | TERRANCE PRUDE,<br>Plaintiff - Appellant<br><br>v.<br><br>DAVID A. CLARKE, JR., et al.,<br>Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:10-cv-00167-JPS<br>Eastern District of Wisconsin<br>District Judge J. P. Stadtmueller | |

The judgment is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED**. We order the defendants to show cause within 14 days of the date of this order why they should not be sanctioned for contumacious conduct in this court.  If they ignore this order to show cause like the last one, they will find themselves in deep trouble.  The above is in accordance with the decision of this court entered on this date.  Award costs to Prude, the appellant.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

*Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit*



### In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2811

TERRANCE PRUDE,

*Plaintiff-Appellant*,

*v.*

DAVID A. CLARKE, JR., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:10-cv-00167-JPS—**J.P. Stadtmueller**, *Judge.*

SUBMITTED MARCH 7, 2012—DECIDED MARCH 27, 2012

Before POSNER, WOOD, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*.  The plaintiff in this prisoner's civil rights suit brought under 42 U.S.C. § 1983 complains that he was subjected to cruel and unusual punishment by personnel of the Milwaukee County Jail. (He has a second, less substantial claim that we discuss at the end of the opinion.) He appeals from the grant of summary judgment to the four defendants, who are the Sheriff

of Milwaukee County, two County Inspectors who work at the jail, and a guard.

The plaintiff is serving time in a Wisconsin state prison, but was transferred to the county jail on several occasions to enable him to attend court proceedings relating to a postconviction petition that he had filed. On the second and third stays, which lasted a week and 10 days respectively, the jail fed him only "nutriloaf," pursuant to a new policy the jail had adopted of making nutriloaf the exclusive diet of prisoners who had been in segregation in prison at the time of their transfer to the jail, even if their behavior in the jail was exemplary. Nutriloaf (also spelled "nutraloaf") is a bad-tasting food given to prisoners as a form of punishment (it is colloquially known as "prison loaf" or "disciplinary loaf"). See, e.g., Jeff Ruby, "Dining Critic Tries Nutra-loaf, the Prison Food for Misbehaving Inmates," *Chicago Magazine*, Sept. 2010, www.chicagomag.com/Chicago-Magazine/September-2010/Dining-Critic-Tries-Nutraloaf-the-Prison-Food-for-Misbehaving-Inmates; Arin Green-wood, "Taste-Testing Nutraloaf: The Prison Loaf That Just Might Be Unconstitutionally Bad," *Slate*, June 24, 2008, www.slate.com/articles/news_and_politics/jurisprudence/2008/06/tastetesting_nutraloaf.html; Matthew Purdy, "Our Towns: What's Worse Than Solitary Confinement? Just Taste This," *N.Y. Times*, Aug. 4, 2002, www.nytimes.com/2002/08/04/nyregion/our-towns-what-s-worse-than-solitary-confinement-just-taste-this.html (all visited March 15, 2012).

No. 11-2811                                                    3

On his third stay, after two days on the nutriloaf diet, the plaintiff began vomiting his meals and experiencing stomach pains and constipation. (He had vomited during the second stay as well.) He stopped eating nutriloaf and subsisted for the eight remaining days of his stay on bread and water (it's unclear how he obtained the bread). He had weighed 168 pounds before his second and third stays at the jail, had lost either 5 or 6 pounds during the second stay, had not regained them, and by the end of the third stay was down to 154 pounds: he had lost 8.3 percent of his weight as a result of the two stays (and he had not been overweight at 168).

A guard sent him to the infirmary after one of the vomiting incidents during his third stay, and the nurses there gave him antacids and a stool softener and one of them told him his weight loss was "alarming." Upon his return to state prison he continued experiencing painful defecation and bloody stools, and he was diagnosed with an anal fissure that the defendants have not denied had developed while he was in the county jail.

The defendants' response to his suit has been contumacious, and we are surprised that the district judge did not impose sanctions. The defendants ignored the plaintiff's discovery demands, ignored the judge's order that they comply with those demands, and continued their defiance even after the judge threatened to impose sanctions. But the judge failed to carry through on his threat, so the threat proved empty.

The only evidence the defendants submitted in support of their motion for summary judgment was a

4                                        No. 11-2811

preposterous affidavit from a sheriff's officer who is also an assistant chief of a suburban Wisconsin fire department. The affidavit states only, so far as bears on the appeal, that "Nutraloaf has been determined to be a nutritious substance for regular meals." The defendants made no effort to qualify him as an expert witness. As a lay witness, he was not authorized to offer hearsay evidence ("has been determined to be . . . nutritious").

No evidence was presented concerning the recipe for or ingredients of the nutriloaf that was served at the county jail during the plaintiff's sojourns there. "Nutriloaf" isn't a proprietary food like Hostess Twinkies but, like "meatloaf" or "beef stew," a term for a composite food the recipe of which can vary from institution to institution, or even from day to day within an institution; nutriloaf could meet requirements for calories and protein one day yet be poisonous the next if, for example, made from leftovers that had spoiled. The recipe was among the items of information that the plaintiff sought in discovery and that the defendants refused to produce.

Even an affidavit from an expert stating after a detailed chemical analysis that "nutriloaf meets all dietary requirements" would be worthless unless the expert knew and stated that nutriloaf invariably was made the same way in the institution. The assistant fire chief's affidavit says no such thing—and he was not an expert.

In addition to stonewalling the plaintiff and the district judge, the defendants failed to file a brief in this

No. 11-2811                                                        5

court and failed to respond to our order to show cause why they hadn't filed a brief. They seem to think that the federal courts have no jurisdiction over a county jail.

Deliberate withholding of nutritious food or substitution of tainted or otherwise sickening food, with the effect of causing substantial weight loss, vomiting, stomach pains, and maybe an anal fissure (which is no fun at all, see http://en.wikipedia.org/wiki/Anal_fissure (visited March 15, 2012)), or other severe hardship, would violate the Eighth Amendment. See, e.g., *Hutto v. Finney*, 437 U.S. 678, 687 (1978); *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Simmons v. Cook*, 154 F.3d 805, 808 (8th Cir. 1998). Not that all nutriloaf is unhealthful, though all is reputed to have an unpleasant taste. But we do not know the recipe for the nutriloaf that was served the plaintiff, or whether the ingredients were tainted or otherwise unhealthful, because of the defendants' failure to comply with the plaintiff's discovery demands. The defendants decided to defy rather than to defend. The uncontradicted evidence is that other prisoners in the jail also vomited after eating the nutriloaf, and this suggests that it was indeed inedible.

The only possible justification for the district court's rejection of the plaintiff's Eighth Amendment claim, at this early stage of the litigation, is that he may not have sued the right defendants, since he can prevail against a defendant only by proving that the defendant was deliberately indifferent to his health. The guard who sent him to the infirmary knew he had vomited, but

6                                                                     No. 11-2811

the guard sent him for medical attention and there is no suggestion that he was responsible for the composition of the nutriloaf or had any reason to suspect its ill effects until the plaintiff got sick. The nurses may have realized that the plaintiff would suffer seriously if he weren't given a different diet, and maybe they should have done something other than just treat his symptoms, but they are not defendants. We don't know the precise role that any of the four defendants—the sheriff, who runs the jail, the two inspectors, and the jail guard (whether he was the guard who sent the plaintiff to the infirmary or some other guard is another thing we don't know)—played in making the plaintiff sick. He filed a grievance with the jail, although after his last sojourn there, when he was back in state prison with its adequate diet. The grievance states that the defendant inspectors had authorized the nutriloaf for the prisoners in the part of the jail in which the plaintiff was housed and that they'd done this pursuant to policy established by the defendant sheriff.

Complaints filed by unrepresented prisoners are supposed to be construed liberally. E.g., *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006); *Chavis v. Chappius*, 618 F.3d 162, 170-71 (2d Cir. 2010). There are intimations in the record that jail officials—who may have included one or more of the named defendants—were aware of the plaintiff's plight, and it is apparent that nothing was done to replace the nutriloaf diet that was sickening him, though he was able somehow to obtain bread. The

No. 11-2811                                                    7

record contains statements that he had "tried to solve this problem by speaking with a [correctional officer]," that after a second incident of vomiting he "told officers again," that he was "taken to the clinical office to be seen by a nurse" (presumably guards took him there), that other inmates were vomiting their nutriloaf meals (which must have been observed by correctional officers), and that he had written the sheriff informing him about their vomiting. Adult vomiting other than because of illness or drunkenness is rare—healthy, sober adults do not vomit a meal just because it doesn't taste good—and if the plaintiff is being truthful there was a veritable epidemic of vomiting during his stay. "A risk can be so obvious that a jury may reasonably infer actual knowledge on the part of the defendants." *Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir. 2004); see *Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994). The defendants have submitted no contrary evidence, once the inadmissible affidavit from the assistant fire chief is ruled out. It is a possible though certainly not an inevitable inference from the record (and from the defendants' contumacy) that jail officials were aware that the nutriloaf being fed the prisoners when the plaintiff was there was sickening him yet decided to do nothing about it. That would be deliberate indifference to a serious health problem and thus state an Eighth Amendment claim.

The dismissal of the suit was premature. Since the plaintiff has departed from the county jail and the case involves medical issues, we suggest that the district court request a lawyer to assist him in litigating his

8                                                        No. 11-2811

claim. The court should also consider imposing sanctions on the defendants.

The plaintiff's other claim is that the defendant jail guard offered him a sandwich (and not of nutriloaf, either) if he would spy on other prisoners, and that he had refused. Bribing prisoners in a nonfederal jail to inform on other prisoners does not violate any federal law of which we're aware. The failure to give the plaintiff the sandwich could not be thought cruel and unusual punishment for his refusing to take the bribe, for it made him no worse off than he would have been had no bribe been offered—stuck with a nutriloaf diet. The second claim adds nothing to the first, so we affirm its rejection.

The judgment is affirmed in part, reversed in part, and remanded. We order the defendants to show cause within 14 days of the date of this order why they should not be sanctioned for contumacious conduct in this court. If they ignore this order to show cause like the last one, they will find themselves in deep trouble.

3-27-12

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

April 19, 2012

*Before*

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 11-2811 | |
| TERRANCE PRUDE,<br>    *Plaintiff-Appellant*, | Appeal from the United States<br>District Court for the Eastern<br>District of Wisconsin. |
| *v.* | |
| | No. 2:10-cv-00167-JPS |
| DAVID A. CLARKE, JR., *et al.*,<br>    *Defendants-Appellees*. | J.P. Stadtmueller, *Judge*. |

**O R D E R**

The plaintiff-appellant filed a petition for rehearing on April 16, 2012.  All the judges on the panel have voted to deny the petition.  The petition is therefore **DENIED**.