IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE PRUDE, | ) |
|     Plaintiff, | ) Case No. 10-CV-167-JPA |
| v. | ) Hon. J.P. Stadtmueller |
| DAVID A. CLARKE, JR., | ) U.S. District Judge |
| KEVIN CARR, | ) |
| RICHARD SCHMIDT, | ) |
| BRET MYERS, KRAIG KVEEN, | ) |
| C.O. McKNIGHT, C.O. LEETE, | ) |
| C.O. FINKELY, | ) |
|     Defendants. | |

## AMENDED COMPLAINT

Plaintiff, Terrance Prude, by the undersigned attorneys, alleges as follows:

### NATURE OF THE CASE

1.    This is a civil action brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, seeking declaratory relief and damages on behalf of Plaintiff for claims arising out of the Eighth Amendment to the United States Constitution. This action alleges that

1

Defendants knowingly subjected Plaintiff to conditions that constitute cruel and unusual punishment by denying him his basic human needs.

## JURISDICTION

2. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiff's civil rights.

3. The Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

4. The Court has jurisdiction to grant damages pursuant to 42 U.S.C. § 1983.

## VENUE

5. This matter is properly venued in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because Defendants reside there and the acts and omissions occurred there.

## EXHAUSTION

6. Plaintiff has exhausted all available administrative remedies.

## PARTIES

7. Plaintiff Terrance Prude ("Prude" hereinafter) was at all relevant times a prisoner of the Wisconsin Department of Corrections ("DOC") being temporarily housed in the Milwaukee County Jail, 949 N. 9th Street, Milwaukee, WI 53233. Prude's

2

current address and place of confinement is Waupun Correctional Institution, 200 South Madison Street, Waupun, WI 53963.

8.     Defendant David A. Clarke, Jr., was at all relevant times the sheriff of the Milwaukee County Jail ("the Jail"). Sheriff Clarke's office is located at 949 North 9th Street, Milwaukee, WI 53233. As Sheriff, he is the legal custodian of all inmates housed at Milwaukee County Jail and is responsible for the safe, secure, and humane housing of those prisoners, including Prude while he was housed there. Sheriff Clarke promulgated, directed, or approved all policies and practices at the Milwaukee County Jail and had custodial responsibilities over all Jail inmates. At all times relevant hereto, he has acted under color of state law. Sheriff Clarke participated in the violations described herein. Sheriff Clarke is sued in his individual and official capacities.

9.     Inspector Richard Schmidt was at all relevant times and inspector for the Milwaukee County Jail. Inspector Clarke's office is located at 949 North 9th Street, Milwaukee, WI 53233. As an inspector, he is the legal custodian of all inmates housed at Milwaukee County Jail and is responsible for the safe, secure, and humane housing of those prisoners, including Prude while he was housed there. Inspector Schmidt promulgated, directed, or approved all policies and practices at the Milwaukee County Jail and had custodial responsibilities over all Jail inmates. At all times relevant hereto, he has acted under color of state law. Inspector Schmidt participated in the violations described herein. Inspector Schmidt is sued in his official and individual capacities.

10. Inspector Kevin Carr was at all relevant times and inspector for the Milwaukee County Jail. Inspector Carr's office is located at 949 North 9th Street, Milwaukee, WI 53233. As an inspector, he is the legal custodian of all inmates housed at Milwaukee County Jail and is responsible for the safe, secure, and humane housing of those prisoners, including Prude while he was housed there. Inspector Carr promulgated, directed, or approved all policies and practices at the Milwaukee County Jail and had custodial responsibilities over all Jail inmates. At all times relevant hereto, he has acted under color of state law. Inspector Carr participated in the violations described herein. Inspector Schmidt is sued in his individual and official capacities.

11. Sgt. Bret Myers was at all relevant times a correctional officer for the Milwaukee County Jail. He was assigned to Pod 4D, where Prude was housed while at the Jail. As a correctional officer, he was responsible for the implementation of Jail directives, guidelines, policies and procedures and for the security, treatment and general living conditions of all inmates assigned to Pod 4D. Sgt. Myers participated in the violations described herein. At all times relevant hereto, he acted under the color of state law. Sgt. Myers is sued in his individual capacity.

12. Deputy Kraig Kveen was at all times relevant a deputy of food services at the Milwaukee County Jail. As deputy, he was responsible for ensuring the safety of the food served to inmates and for ensuring that food was properly delivered to all inmates, including Prude while he was housed there. Kveen participated in the

4

violations described herein. At all times relevant hereto, he acted under the color of state law. Kveen is sued in his individual capacity.

13. C.O. McKnight was at all relevant times a correctional officer for the Milwaukee County Jail. He was assigned to Pod 4D, where Prude was housed while at the Jail. As a correctional officer, he was responsible for the implementation of Jail directives, guidelines, policies and procedures and for the security, treatment and general living conditions of all inmates assigned to Pod 4D. McKnight participated in the violations described herein. At all times relevant hereto, he acted under the color of state law. McKnight is sued in his individual capacity.

14. C.O. Leete was at all relevant times a correctional officer for the Milwaukee County Jail. He was assigned to Pod 4D, where Prude was housed while at the Jail. As a correctional officer, he was responsible for the implementation of Jail directives, guidelines, policies and procedures and for the security, treatment and general living conditions of all inmates assigned to Pod 4D. Leete participated in the violations described herein. At all times relevant hereto, he acted under the color of state law. Leete is sued in his individual capacity.

15. C.O. Finkely was at all relevant times a correctional officer for the Milwaukee County Jail. He was assigned to Pod 4D, where Prude was housed while at the Jail. As a correctional officer, he was responsible for the implementation of Jail directives, guidelines, policies and procedures and for the security, treatment and general living conditions of all inmates assigned to Pod 4D. Finkley participated in the

violations described herein.  At all times relevant hereto, he acted under the color of state law.  Finkely is sued in his individual capacity.

16. At all times relevant hereto, all Defendants have acted within their scope of employment with the Milwaukee County Sheriff's Office.

## STATEMENT OF FACTS

17. Terrance Prude was an inmate housed in the Milwaukee County Jail for 19 days on two separate occasions during September and October 2009.

18. The Jail has a unit for inmates held in segregation, including those inmates in protective custody status, disciplinary segregation, and non-punitive segregation. The segregation unit is called Pod 4D.

19. Prude transferred as state prisoner to the Jail first on September 24, 2009 through October 1, 2009, and then on October 12 through October 22, 2009, for court appearances.

20. At the time of his transfer on September 24, 2009, Prude was on "administrative confinement" status, which is a non-punitive segregation status under the DOC rules.  In DOC's custody, Prude received regular meals, not nutraloaf.

21. When he was transferred to the Jail, Prude was classified as "maximum security" and housed in Pod 4D.

22. Inmates in Pod 4D are issued rules, entitled "Pod 4D Inmate Rules."  The version of Pod 4D Inmate Rules in effect in September and October 2009 stated:

6

You will receive a bag lunch or tray - Any refusal to return the bag, wrapping, milk container, eating utensil, tray , or the intentional projection of any food item or using an food container to project items shall result in your receiving the "Nutraloaf" for a 3 - 30 day period.

23. Prude received a copy of the Pod 4D Inmate Rules when he was at the Jail.

24. A bag lunch and a tray are regular prison meals.

25. Nutraloaf is a combination of foods, including meat products, vegetables, dairy products and oil. The actual recipe varies from day to day. It is a hard lump of congealed food served cold in a bag.

26. Meals for the Jail, including bag lunches, trays and nutraloaf, are prepared by a third-party vendor for the Jail.

27. To meet nutritional requirements, nutraloaf is to be served with three slices of bread at all meals.

28. Jail officials are responsible for ensuring Jail meals are wholesome and unspoiled.

29. Jail officials are also responsible for serving the prepared meals to inmates, including those housed in Pod 4D.

30. Prude committed no rule violations, including any food-related rule violations, while housed at the Jail between September 24 and October 1, 2009.

31. Prude was fed only nutraloaf for his meals from September 24, 2009 to October 1, 2009.

32. Before being transferred to the Jail on September 24, 2009, Prude weighed 168 pounds. Prude became ill from eating the nutraloaf, which caused him to vomit his meals and lose 5 to 6 pounds during that 8-day visit to the Jail.

33. Knowing that he would be housed in the Jail for other court appearances later in October 2009, before his transfer back to the Jail, Prude complained directly to Defendants Sheriff Clarke, Inspector Carr and Inspector Schmidt that he should not be given nutraloaf because he had not violated any rules to warrant placing him on nutraloaf and because the Jail nutraloaf made him, as well as other inmates, very ill.

34. Before returning to the Jail, Prude also filed an inmate grievance form complaining that he should not be placed on nutraloaf.

35. At the time of his second transfer on October 12, 2009, Prude was on "administrative confinement" status, which is a non-punitive segregation status under the DOC rules. In DOC's custody, Prude received regular meals, not nutraloaf.

36. When he returned to the Jail on October 12, 2009 for his court appearances, he was again housed in Pod 4D on maximum security status.

37. Sgt. Myers responded to Prude's inmate grievance form about being placed on nutraloaf that, according to Sheriff Clarke, all maximum security Pod 4D inmates are to receive only nutraloaf.

38. Prude was placed on a strict nutraloaf diet and did not receive any regular meals between October 12 and October 22, 2009.

39. Prude committed no rule violations, including any food-related rule violations, while housed at the Jail between October 12 and 22, 2009.

40. On six occasions between October 12 and 22, 2009, Defendants served Prude left-over nutraloaf meals that were not used at a prior meal and that were stored without refrigeration by the correctional officers.

41. On six occasions between October 12 and 22, 2009, Defendants did not serve any slices of bread with any of Prude's nutraloaf meals.

42. On October 14, 2009, Prude became very ill after eating nutraloaf. He vomited his meal and suffered severe stomach pains and other injuries from being placed on nutraloaf.

43. Prude was seen by health services staff about his illness from the nutraloaf and Prude told staff that the nutraloaf caused him and other inmates in Pod 4D to become ill. Prude asked health services staff to be placed on other food, but was denied that request.

44. On October 14, 2009, Prude asked Defendants McKnight, Leete and Finkely to provide him other meals because the nutraloaf made him ill. Defendants McKnight, Leete and Finkely refused to give Prude food other than nutraloaf.

45. On October 17, 2009, Prude complained to Sgt. Myers about the nutraloaf making him sick and the fact that left-over nutraloaf meals were re-served after being stored without refrigeration between meals.

46. Prude also complained to health services staff that the nutraloaf was spoiled and that he was unable to eat the nutraloaf without vomiting. Sgt. Myers was informed about this complaint from health services staff.

47. Sgt. Myers did not take action to place Prude on regular food.

48. According to Sgt. Myers, per Sheriff Clarke, all inmates in Pod 4D with a status of maximum security were to be served nutraloaf for all meals.

49. The Pod 4D Inmate Rules applicable to maximum security inmates in Pod 4D during September and October 2009 allowed inmates regular meals unless they violated a rule related to meal service.

50. Prude was not accused of any rule violations, including food-related violations, at any time he was housed at the Jail in September and October 2009. He was transferred to the Jail from the DOC on a non-punitive status. There were no penological reasons to deny Prude regular meals.

51. Prude remained on a strict nutraloaf diet until he transferred back to DOC custody on October 22, 2009.

52. By October 22, 2009, Prude was down to 154 pounds from 168 pounds when he first visited the Jail. That is, he lost 8.3 percent of his weight as a result of the two stays at the Jail.

53. Defendants knowingly failed to provide Prude adequate nutrition and served unwholesome and spoiled food to Prude that made him vomit and lose a significant amount of weight in a short time.

10

54. Prude has suffered, and continues to suffer, physical injury and emotional distress as a result of Defendants placing him on a nutraloaf diet while housed at the Milwaukee County Jail.

**CAUSE OF ACTION UNDER 42 U.S.C. § 1983:**
**VIOLATION OF THE EIGHTH AMENDMENT**
**OF THE U.S. CONSTITUTION**

55. Prude reincorporates and reallages all of the previous allegations contained above in their entirety and further alleges as follows:

56. Each Defendant by his actions and/or omissions has violated Prude's Eighth Amendment right to be free of cruel and unusual punishment.

57. By subjecting Prude to the conditions set forth herein, with full knowledge of these conditions, Defendants have acted with deliberate indifference to Plaintiff's need for wholesome and nutritious food, with deliberate indifference to a substantial risk of serious harm to Prude's health, and with deliberate indifference to Prude by subjecting him to a nutraloaf diet without any penological purpose.

58. Because of Defendants' deliberate indifference to Plaintiff's rights, Prude suffered, and continues to suffer, physical and mental injuries.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Issue a judgment declaring that the actions and omissions of Defendants described herein are unlawful and violated Plaintiff's rights under the

Eighth Amendment of the U.S. Constitution and the laws of the United States;

B.  Award Plaintiff compensatory damages for Plaintiff's physical injury, pain and suffering, emotional and psychological damages in an amount to be determined;

C.  Award punitive damages against each Defendant in an amount to be determined;

D.  Award Plaintiff his reasonable attorneys fees and costs and expert fees pursuant to 42 U.S.C. § 1988 and other applicable law; and

E.  Grant Plaintiff such other relief as the Court considers just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated this 4th day of September, 2012.

**MCGILLIVRAY WESTERBERG & BENDER**
s/Pamela R. McGillivray_____
Pamela R. McGillivray
Wis. Bar No. 1034194
Christa O. Westerberg
Wis. Bar No. 1040530
211 S. Paterson St., Ste. 320
Madison, WI 53703
mcgillivray@mwbattorneys.com
westerberg@mwbattorneys.com
tel: (608) 310-3560
fax: (608) 310-3561

*Attorneys for Plaintiff*

12