UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE PRUDE,<br><br>                Plaintiff,<br><br>v.<br><br>DAVID A. CLARKE, JR.,<br>KEVIN CARR, RICHARD S. SCHMIDT,<br>JAILOR MCKNIGHT, BRET MYERS,<br>KRAIG KVEEN, C.O. LEETE, and<br>C.O. FINKELY,<br><br>                Defendants. | Case No. 10-CV-167-JPS<br><br><br><br>ORDER |

       The plaintiff, Terrance Prude ("Prude"), claims that the defendants subjected him to unconstitutional conditions of confinement at the Milwaukee County Jail ("Jail") in violation of the Eighth Amendment of the United States Constitution, arising from two terms served at the Jail in September and October 2009. In both terms, Prude was served nutraloaf, a combination of meat products, vegetables, dairy products, and oil, generally in solid form and served cold in a bag; in both terms, Prude experienced health issues, which he alleges were caused by the nutraloaf. Prude claims that defendants acted with deliberate indifference: (1) to his need for wholesome and nutritious food; (2) to a substantial risk of serious harm to Prude's health; and (3) by subjecting him to a nutraloaf diet without any penological purpose. (Am. Compl.) The plaintiff has filed a motion for partial summary judgment against defendants Clarke, Carr, Schmidt, and

McKnight.[1] The defendants have filed a motion for summary judgment. The court concludes that genuine issues of material fact preclude the grant of summary judgment as to the substance of the plaintiff's claims. One discrete portion of plaintiff's motion for summary judgment will be granted; as explained below, the court concludes that defendants Clarke, Carr, Schmidt, and McKnight are not protected by qualified immunity, and therefore grants plaintiff's motion on that point.

1.	Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, the court must construe all reasonable inferences in favor of the nonmovant. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

The substance of the parties' motions overlaps significantly. Plaintiff argues entitlement to summary judgment on the following three claims: (1)

---

[1] On September 4, 2012, the plaintiff filed an amended complaint naming as additional defendants Bret Myers, Kraig Kveen, Officer Leete, and Officer Finkely. The newly named defendants had not answered the amended complaint when the plaintiff filed his summary judgment motion and, therefore ,were not subject to the motion. (Pl.'s Mem. of Law in Supp. of Mot. for Part. Summ. J. at 2 n.1.)

feeding a prisoner nutraloaf without a penological purpose is a per se violation of the Eighth Amendment; (2) even if it is not a per se violation to feed a prisoner nutraloaf, it is an Eighth Amendment violation when the nutraloaf causes the prisoner to become ill and defendants are deliberately indifferent to the risk of that illness; and (3) defendants Clarke, Carr, Schmidt, and McKnight are not entitled to qualified immunity. Defendants' motion for summary judgment presents antithetical arguments to the first two presented by plaintiff, claiming: (1) the nutraloaf policy is not unconstitutional due to an alleged lack of penological basis; and (2) plaintiff cannot prove that nutraloaf posed a substantial risk of harm and that defendants were deliberately indifferent.[2]

2. Constitutionality of Feeding Inmates Nutraloaf Without a Penological Purpose

In this case, the parties dispute whether there was a penological purpose in feeding the plaintiff nutraloaf.[3] This threshold question notwithstanding, both parties urge the court to resolve, as a matter of law, whether a jail policy of feeding nutraloaf without a penological objective violates the Constitution. The court declines this invitation, because if, as

---

[2] Defendants also argue that plaintiff cannot prove claims for failure to provide medical care, for failure to follow the County's nutraloaf policy, or against defendants for being "personally involved with placing Plaintiff on a Nutraloaf diet." The court does not consider these arguments as plaintiff does not allege liability on these grounds.

[3] *Compare* Martin Decl. (Dkt. #124) at 10 ("[Jail] officials as a matter of policy and practice imposed a restricted diet for plaintiff in a summary fashion that was unrelated to any valid penological objective or purpose."); *with* Eisner Decl. (Dkt. #140) at 3, ¶ 6 (challenging the sources cited by Mr. Martin); *and* Nyklewicz Decl. (Dkt. #134) at 2, ¶¶ 8-11 (explaining "maximum security" status, Pod 4D, and the purpose of the nutraloaf policy).

defendants argue, there was a penological purpose for serving the nutraloaf, then the plaintiff's constitutional question is rendered moot. The court does not believe it would be an efficient use of judicial resources to resolve this constitutional question at this stage in the case. Thus, the court awards neither party summary judgment on this point.

3.  Constitutionality of Feeding Prude Nutraloaf

Plaintiff claims entitlement to summary judgment on his Eighth Amendment claim, arguing that the record establishes: that Prude was served tainted or spoiled nutraloaf, which presented a substantial risk of serious harm to his health; that the nutraloaf caused illness; and that defendants were deliberately indifferent to the risk of harm caused by the nutraloaf. Defendants argue entitlement to summary judgment on the grounds that plaintiff cannot meet his burden of proof. The court concludes that summary judgment cannot issue because material facts remain in dispute. The parties dispute whether the plaintiff was, in fact, threatened with substantial risk of serious harm to his health;[4] whether the injury was caused by the nutraloaf;[5] and whether defendants were deliberately

---

[4] While there is no dispute that plaintiff vomited multiple times while in custody at the Jail, the parties dispute other claimed injuries, including an anal fissure and weight loss. *Compare* Prude Depo. (Dkt. #128-3) at 75:13 ("I was still being treated for a [sic] anal fissure that I suffered in Milwaukee County jail."); *with* Goodman Decl. (Dkt. #136) at 3 ¶ 8 ("It also is my professional opinion to a reasonable degree of medical probability that there was no evidence of an active anal fissure at any time.").

[5] *Compare* Prude Decl. (Dkt. #125) at 1 ("On October 14, 2009, I became very ill after eating nutraloaf, vomiting my breakfast and evening nutraloaf meals and suffered severe stomach pains and other injuries from the nutraloaf."); *with* Goodman Decl. (Dkt. #136) at 2 ¶ 6 ("It is my professional opinion to a reasonable degree of medical probability that there is no causal relationship between Mr. Prude's consumption of Nutraloaf and the alleged complaints he describes.").

indifferent to plaintiff's health.[6] There being numerous material facts in dispute, neither parties' claims are amenable to resolution via summary judgment.

4. Qualified Immunity

Plaintiff argues that defendants Clarke, Carr, Schmidt, and McKnight are not entitled to qualified immunity, while defendants maintain that they are so entitled. A government official is entitled to qualified immunity when the conduct at issue "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In considering a claim of qualified immunity, the court must determine: (1) if, "[t]aken in the light most favorable to the party asserting the injury," the facts show the official's conduct violated a constitutional right; and (2) whether the right was "clearly established" at the time of the injury. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may make these determinations in either order. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Addressing the second prong first, the court concludes that, prior to September and October 2009, it had been clearly established that inmates are entitled to "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well

---

[6]As one example, there is a dispute as to whether Prude was ever served spoiled nutraloaf while in the Jail. *Compare* Prude Depo. (Dkt. #128-3) at 67:9 ("Well, some days the Nutraloaf was spoiled.") *and* at 69:4 ("The pod I was in, I can actually see the guards going in the locker and remove leftovers from prior meals and they would serve them.") *with* Myers Dec. (Dkt. #139) at 2 ¶¶ 7-8. ("I am aware that Mr. Prude claims that he witnessed jail officers remove Nutraloaf bags from a "locker" on Pod 4D and bring it to Mr. Prude in his cell. Mr. Prude is incorrect. Nutraloaf was not stored without refrigeration and then served to inmates.")

being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (*quoting Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980)). Refusing to remove an inmate from the nutraloaf diet, despite knowledge that the diet causes a risk of serious medical harm, or distributing spoiled or tainted food to inmates, could certainly "present an immediate danger to the health and well being of the inmates." Thus, the second *Saucier* prong is satisfied.

As for the first *Saucier* prong, when taken in the light most favorable to Prude, the court is satisfied that a violation of a constitutional right is shown for purposes of qualified immunity analysis with respect to defendants Clarke, Carr, Schmidt, and McKnight. Prude's burden is to show that the nutraloaf presented a substantial risk of serious harm to his health and that defendants were deliberatively indifferent to the risk of harm. *Farmer v. Brennan*, 511 U.S. 825 (1994). Prude has offered evidence showing that nutraloaf presented a risk of harm because he experienced significant health issues when he ate it, and because some of the nutraloaf he received was spoiled or tainted. With regard to defendants Clarke, Schmidt, and Carr, plaintiff has offered evidence that they knew of the risk nutraloaf posed to Prude because he directly notified them of such risk via letters and an official grievance sent to or filed with those individuals. With regard to defendant McKnight, plaintiff has offered evidence showing that he knew of Prude's health issues because he witnessed Prude vomiting and because Prude asked him for assistance and alternative meals. Plaintiff also alleges that these four defendants took no reasonable measures to address the risk of harm, despite their knowledge of the risk. Accordingly, considering this evidence in a light

most favorable to plaintiff, the court can only conclude that defendants Clarke, Carr, Schmidt, and McKnight are not shielded by qualified immunity.

Accordingly,

IT IS ORDERED that the plaintiff's motion for partial summary judgment (Docket #121) be and the same is hereby GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment (Docket #129) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 17th day of December, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge